# EXHIBIT A

ORK

sandy recd this @ back door 3/23/22

## SUMMONS
### (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
The Colonies-Pacific 19C, LLC, a California limited liability company; and Does 1-10,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Teresa Hicks, an individual,

JAN 10 2022

BY _____ DEPUTY
Kaluka Monticue

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*  San Bernardino District - Civil Division<br>247 West Third Street<br>San Bernardino, CA 92415-0210 | CASE NUMBER: *(Número del Caso):*<br>CIV SB 2122 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Peter Shahriari, 1800 Vine Street, Los Angeles, CA 90028 (888) 635-2250

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)*  JAN 10 2022 | Clerk, by<br>*(Secretario)* | | , Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

ORIGINAL

1    Anoush Hakimi (SBN 228858)
2    anoush@handslawgroup.com
     Peter Shahriari (SBN 237074)
3    peter@handslawgroup.com
4    Laura Steven (SBN 332168)
     laura@handslawgroup.com
5    Kyle Wilson (SBN 323888)
6    kyle@handslawgroup.com
     Reha Singh (PL-512467)
7    reha@handslawgroup.com
8    **THE LAW OFFICE OF HAKIMI & SHAHRIARI**
     1800 Vine Street
9    Los Angeles, CA 90028
10   Telephone: (888) 635-2250
     Facsimile: (213) 402-2170
11

12   Attorneys for Plaintiff,
     **TERESA HICKS**
13

14          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                **COUNTY OF SAN BERNARDINO**

16

17   TERESA HICKS, an individual,          Case No. CIV SB 2 1 3 2 2 7 1

18          Plaintiff,                      Assigned to:

19          v.

20                                          **VERIFIED COMPLAINT FOR
                                            VIOLATION OF AMERICANS**
21   THE COLONIES-PACIFIC 19C, LLC, a       **WITH DISABILITIES ACT OF 1990,**
     California limited liability company; and   **42 U.S.C. § 12181, *et seq.*; UNRUH**
22   DOES 1-10,                             **CIVIL RIGHTS ACT, CALIFORNIA
                                            CIVIL CODE § 51, *et seq.***
23

24          Defendants.                     _DEMAND FOR JURY TRIAL_

25

26

27          **Most Americans will become disabled at some point in life.**

28

---

                        VERIFIED COMPLAINT

FILED
SUPERIOR COURT
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

NOV 1 7 2021

BY _____ DEPUTY
      Kalieka Montiel

CIV SB 2 1 3 2 2 7 1

Plaintiff Teresa Hicks (hereinafter referred to as "Plaintiff") complains of The Colonies-Pacific 19C, LLC, a California limited liability company; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.   PARTIES

1.   Plaintiff Teresa Hicks suffers from degenerative disk disease which causes her constant pain and makes it difficult for her to move and walk.  She has tingling and numbness in her feet and legs.  She also has limited range of movement.  He is a disabled person entitled to the protections of the California Unruh Civil Rights Act (UCRA) (see Cal. Civ. Code §§ 51, et seq., 52, et seq.), the Americans with Disabilities Act (ADA) (see 42 U.S.C. § 12102, et seq.), and other statutory laws which protect the rights of "disabled persons."  Plaintiff has been issued a blue permanent Disabled Person Parking Placard, by the State of California.  Plaintiff is a California resident with physical disabilities.

2.   Defendant The Colonies-Pacific 19C, LLC, a California limited liability company, owns/owned the property ("Property") located at 1401 E. 19th Street, Upland, CA 91784, at all relevant times.

3.   There is a business establishment on the Property named "The Home Depot," (hereinafter, "the business").

4.   The business establishment is a public accommodation as defined by 42 U.S.C. § 12181(7), and California Health and Safety Code § 19955.

2
VERIFIED COMPLAINT

5.     Does 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants. Plaintiff is unaware of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

6.     Plaintiff alleges that Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, representative partners, subsidiaries, partner companies, and/or joint ventures of the remaining Defendants; and were acting within the course and scope of that relationship. Plaintiff is further informed and believes and alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

7.     Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

8.     Plaintiff visited the business to patronize the business products and view what products are offered.

9.     Plaintiff was in the geographic area of the business at issue because it is relatively geographically close to her.

VERIFIED COMPLAINT

10.     Plaintiff frequented the business because she needed this type of product.

## II.     JURISDICTION & VENUE

11.     This Court has subject matter jurisdiction over this action.  The Court also has personal jurisdiction over Defendants because Defendants conducted and continue to conduct substantial business in California; Plaintiff's claims arose in California; and Defendants' facility, property, and/or business is available for patronage in California.  The access barriers described by Plaintiff were experienced in California.

12.     Venue is proper in this Court because Defendants conduct substantial business in this county, and the real property which is the subject of this action is located in this county.  Venue is also proper because Plaintiff's cause of action arose in this county.

## III.     FACTS

13.     The Property and/or the business owned, leased, and/or operated by Defendants is a facility which is open to the public and includes a business establishment.

14.     The Property has been newly constructed, and/or underwent remodeling, repairs, or alterations since 1992, and Defendants have failed to comply with California access standards which applied at the time of each new construction and/or alteration, or failed to maintain accessible features in operable

4

VERIFIED COMPLAINT

working condition.

15.     Plaintiff visited the Property during the relevant statutory period on three (3) separate occasions, on July 2021 and August 2021 to patronize the business on the Property.

16.     The premises violated applicable California and federal construction-related accessibility standards, including Title 24 of the California Code of Regulations (California Building Standards Code), Part 36 of Title 28 of the Code of Federal Regulations (28 CFR Part 36), the ADA Standards for Accessible Design ("ADAS"), and the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG").

17.     Defendants did not offer persons with disabilities with equivalent facilities, privileges, and advantages offered by Defendants to other patrons.

18.     Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

19.     Parking, paths of travel, and signage, and other architectural amenities for patrons visiting the Property are among the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

20.     However, there are (were) inadequate accessibility features for disabled persons at the Property.  Defendants' facilities do not comply with the ADAS, ADAAG, and/or the California Building Code ("CBC").

21.     When Plaintiff visited the Property, she experienced multiple access barriers, including barriers related to parking, paths of travel, and signage.

Plaintiff encountered the following barriers at Defendants' facilities:

**The Home Depot has several designated disabled parking spaces but not a single one is compliant. All the signs lack compliant signage as they have been completely washed out. The space dimensions for the parking spaces and access aisles do not measure the correct length/width dimensions. Plaintiff needs adequate space to disembark her vehicle. The paths of travel have slopes and pavement distresses which pose risks of tripping/falling for Plaintiff. Plaintiff cannot safely access this business.**

**VIOLATION of 1991 ADAS § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC § 1114B.1.2; 2019 CBC § 11B-206.2.1.** (Exterior route of travel.) An accessible route of travel is not provided to all entrances and portions of the building, to all entrances of the Property, and/or between the building and a public way.  Plaintiff needs a dedicated path of travel, free of obstructions and vehicles, where (on which) Plaintiff can travel.  It is dangerous for Plaintiff to navigate without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS §§ 4.1.2(1), 4.3.2(1); 2010 ADAS §§ 206.1, 206.2, 206.2.1, 206.2.2, 206.2.4; 2010 CBC § 1114B.1.2; 2010 CBC § 1127B.1; 2019 CBC §§ 11B-206.2.1, 11B-206.2.2, 11B-206.2.4.**

(Accessible route of travel.)  At least one accessible route shall be provided within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.  At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.  The requisite accessible route of travel is not provided.  There is no accessible route of travel from the designated disabled parking spaces, adjacent access aisle to the business/building entrance. Plaintiff needs an accessible route of travel, with level and smooth ground, free of obstructions and vehicles, whereupon Plaintiff can ambulate.  It is dangerous for Plaintiff to travel these areas without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.  The lack of a safe and accessible route, with a smooth and level surface, denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/ harder for Plaintiff to traverse.

**VIOLATION of 1991 ADAS § 4.1.2(7); 2010 ADAS § 216.6; 2010 CBC §**

**1127B.3; 2019 CBC § 11B-216.6.** (Directional signage.)  There is no directional signage showing an accessible path of travel to an accessible entrance.  Plaintiff faces an increased risk of injury if Plaintiff is required to backtrack because Plaintiff cannot find an accessible entrance into the business/building.  Thus, Plaintiff requires clear signage directing him to any accessible entrance(s).  Accessible entrances should be marked with an International Symbol of Accessibility.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § § 11B-502.8, 11B-502.8.2.** (Off-street unauthorized parking sign – not posted.)  The tow away sign(s) (white sign stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED AWAY") must be posted in a conspicuous place at each entrance to an off-street parking lot (facility), or immediately adjacent to and visible from each designated parking stall (space).  The requisite sign(s) are not posted.  Plaintiff must use the designated disabled parking spaces and requires the proper protections of an access aisle and an accessible route of travel to safely access the Property.  Clear signage that explicitly warns of the consequences for improperly parking in the designated disabled parking spaces will deter others without disabilities from parking there.

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIOLATION of 1991 ADAS § 4.6.4; 2010 ADAS § 502.6; 2010 CBC §**

**1129B.4; 2019 CBC § 11B-502.6.2.** (Sign missing – "Minimum Fine

$250.") There was no sign warning of the minimum fine of $250 for

unauthorized parking posted in front of the right designated disabled parking

space. Plaintiff needs to park in the space that is closest to the business

entrance and designated for disabled persons. Clear signage that distinctly

warns of the penalties for unauthorized parking in the designated disabled

parking space will deter others without disabilities from parking in the space

and thereby blocking Plaintiff from being able to use it.

**VIOLATION of 2019 CBC § 11B-502.6; 2010 ADAS § 502.6.** (Sign

obscured.) The sign identifying designated disabled parking space(s) is

illegible because it is completely washed out. This makes it difficult for

Plaintiff and other patrons to see and read the sign. Plaintiff needs to be able

to use an accessible parking space, with an access aisle, to safely access the

Property. Clear signage that explicitly marks the designated disabled parking

space will deter others without disabilities from parking in the space and

thereby blocking Plaintiff from being able to use it. Plaintiff needs to park in

the space that is nearest to the business entrance and designated for disabled

patrons.

**VIOLATION of 1991 ADAS § 4.3.7; 2010 ADAS § 403.3; 2019 CBC §**

**11B-403.3.** (Route/path of travel – cross slopes.)  The cross slopes of the

route/path of travel are greater than two percent (2%).  It is difficult for

Plaintiff to travel on surfaces with excess slopes.  Plaintiff is at risk of falling

when there are surfaces with excess slopes.  The presence of excess slopes

denied Plaintiff full and equal use or access during Plaintiff's visits by

making it difficult and/or uncomfortable for Plaintiff to traverse the

property/route.  The barrier also deterred/deters Plaintiff from visiting the

Property because it would make it difficult and/or uncomfortable for

Plaintiff to walk/traverse the property/route.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1,**

**303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019**

**CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5.** (Abrupt

changes in level; uneven ground surface.)  Floor and ground surfaces shall be

stable, firm, and slip resistant.  Changes in level of 1/4 inch high maximum

shall be permitted to be vertical and without edge treatment.  Changes in

level between ¼-inch high minimum and ½-inch high maximum shall be

beveled with a slope not steeper than 1:2. Changes in level greater than 1/2

inch high shall be ramped.  The route of travel, including from the designated

disabled parking space to the entrance of the building/business, have an

uneven ground surface with changes in level exceeding one-half inch (1/2")

(and no ramps are provided).  The route of travel has damaged ground which

is not flush or flat.  The ground has pavement distresses.  The types of

pavement distresses which exist include but are not limited to:  alligator

(fatigue) cracking; joint reflection cracking; potholes; asphalt bleeding;

patching near utilities; block cracking; raveling; stripping; corrugation and

shoving; and depressions.  These pavement distresses are made worse and

exacerbated by design elements which do not follow the ADAAG.  These

areas should be fixed immediately because they pose a tripping and/or falling

hazard.  Plaintiff, a cannot safely and fully enjoy the premises when such

conditions are present.  These excess changes in level and uneven ground

surfaces pose risks to Plaintiff, including that Plaintiff's foot, may catch on

the uneven ground causing Plaintiff to fall.  These abrupt changes in level

pose an increased risk of danger to Plaintiff, as Plaintiff is more likely to

trip/fall than someone without disabilities.  The excess changes in level (i.e.,

uneven ground) denied Plaintiff full and equal use or access during each of

Plaintiff's visits by making it difficult/harder and more dangerous for

Plaintiff to traverse the property/route.  The excess changes in level (i.e.,

uneven ground) also deterred/deters Plaintiff from visiting the Property

because it would be difficult/harder and more dangerous for

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.** (Width of designated disabled parking space.) The designated disabled parking space measured/measures less than nine feet (9') wide, which made (would make) it difficult for Plaintiff to use the designated space, and which denied (would deny) plaintiff full and equal use and access of the full width of the required space. Plaintiff cannot safely disembark from the vehicle when adequate space is not provided. Plaintiff needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for Plaintiff, as opposed to non-disabled persons to maneuver about the Property.

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.** (Length of designated disabled parking space.) The designated disabled parking space measures/measured less than eighteen feet (18') long, which made (would make) it difficult for Plaintiff to use the designated space, and which denied (would deny) plaintiff full and equal use and access of the full length of the required space. Plaintiff cannot safely park and disembark from the vehicle when adequate space is not provided. Plaintiff

12

VERIFIED COMPLAINT

needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for Plaintiff, as opposed to non-disabled persons, to maneuver about the Property.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.2.** (Length of adjacent access aisle.) The access aisle adjacent to the designated disabled parking space is/was less than eighteen feet (18') long (which is also the required length of the designated disabled parking space), which denied (would deny) plaintiff full and equal use and access of the full length of the required access aisle. Plaintiff needs extra space to be able to safely exit the vehicle. When the access aisle is too small, Plaintiff has difficulty disembarking from the vehicle, which poses a greater risk of injury to Plaintiff and can also cause humiliation and/or frustration.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.1; 2010 CBC § 1129B.3; 2019 CBC 11B-502.3.1.** (Width of adjacent access aisle.) The loading/unloading access aisle adjacent to the designated disabled parking space is/was less than five feet (5') wide, which denied (would deny) plaintiff

13
VERIFIED COMPLAINT

full and equal use and access of the full width of the required access aisle. Plaintiff needs extra space to be able to safely exit the vehicle. When the access aisle is too small, Plaintiff has difficulty disembarking from the vehicle, which poses a greater risk of injury to Plaintiff and can also cause humiliation and/or frustration.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2016 CBC §§ 11B-502.4, 11B-502.3.3; 2010 CBC § 1129B.3.4.** (Slope of designated disabled parking spaces.) The designated disabled parking spaces have slopes and cross slopes that are greater than two percent (2%). Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet may catch on the sloped ground, causing Plaintiff to fall.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2010 CBC § 1129B.3.3; 2019 CBC § 11B-502.4.** (Slopes of adjacent access aisle.) The loading/unloading access aisle adjacent to the designated disabled parking spaces has surface slopes greater than two percent (2%). Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface. Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet may catch on the sloped ground, causing Plaintiff to fall.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3.1; 2019 CBC § 11B-502.3.** (No loading/unloading access aisle.) The loading/unloading access aisle which is required to be adjacent to the designated disabled parking space is/was essentially missing.  There were a few barely visible lines, which may have been the remnants of a once painted access aisle, but which did not constitute or depict a compliant access aisle.  This made it difficult for Plaintiff to use the space (i.e., the barely visible former access aisle) to safely disembark from the vehicle.  The barrier denied (would deny) Plaintiff full and equal use or access, by depriving Plaintiff of an aisle which is required to be properly striped/ marked for Plaintiff's use (i.e., for the use of disabled persons as opposed to nondisabled persons).  Plaintiff requires sufficient space to safely disembark with her mobility device(s) away from other vehicles.  Also, when an access aisle is not clearly painted, there is a greater chance that non-disabled individuals will park in the access aisle, blocking Plaintiff's use thereof.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.4.** (Parking space ground surface signage.)  The paint used for the designated disabled parking space is faded and cannot (can hardly) be seen; thus, there is no compliant surface signage at the designated disabled parking space.

15
VERIFIED COMPLAINT

The International Symbol of Accessibility is so faded and worn that it can hardly be seen. This makes it difficult for Plaintiff and other patrons to identify or locate the designated disabled parking space. When the paint for the International Symbol of Accessibility is so faded and worn, there is a greater risk that non-disabled patrons will park in the designated disabled parking space, preventing Plaintiff from using it and accessing the business. Plaintiff needs to be able to park in the space that is nearest to the entrance and designated for disabled patrons. Plaintiff needs to be able to use an accessible parking space, with an access aisle, to safely access the Property. Clear surface signage that explicitly marks the designated disabled parking space will deter others without disabilities from parking in the space, so that the space can be available for Plaintiff's use.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.  (Access aisle adjoining accessible route.)** The adjacent loading/unloading access aisles must adjoin an accessible route to an accessible entrance. It does/did not. Plaintiff cannot access the Property safely unless there is an access aisle onto which Plaintiff can disembark from the vehicle. The access aisle must lead to an accessible route, so that Plaintiff can safely travel to and enter the business. There is no safe route of travel from the designated disabled parking space to the business

16

VERIFIED COMPLAINT

entrance.  The barrier deterred/deters Plaintiff from visiting the property

because the lack of a safe and accessible route would make it difficult,

uncomfortable, and/or unsafe for Plaintiff to walk around the property,

including to travel from the designated disabled parking space to the building

entrance.


**VIOLATION of 1991 ADAS §§ 4.3.7, 4.8.1; 4.8.4(2), 4.8.4(3); 2010 ADAS**

**§ 403.3; 2010 CBC §§ 1133B.5.4.2, 1133B.5.4.6; 2019 CBC § 11B-403.3.**

(Excess slopes; no compliant ramp.)  The route(s) of travel has/have slopes

greater than 1:20 (5%), but there is no compliant ramp (with appropriate

level ramp landings at the top and bottom of each ramp).  It is difficult for

Plaintiff to walk on sloped surfaces that do not provide the safety features of

a compliant ramp.  These excess changes in level pose risks to Plaintiff,

including that Plaintiff may fall. The lack of a complaint ramp, with its

attendant safety/accessibility features, denied Plaintiff full and equal use or

access during his visits by making it difficult/harder for Plaintiff to traverse

the property/route.


**VIOLATION of 2010 CBC § 1133B.5.2; 2019 CBC § 11B-405.5.**

(Minimum width of ramps.)  The route of travel has slopes greater than 1:20

(5%), but there is no compliant ramp.  There is no compliant ramp with a minimum width of forty-eight inches (48").  Plaintiff requires adequate space to navigate on sloped surfaces and/or ramps and Plaintiff cannot do so without a ramp of sufficient width.  The lack of a complaint ramp, of the requisite width, denied Plaintiff full and equal use or access during Plaintiff's visits by making it difficult/ harder for Plaintiff to traverse the property/route. The lack of a complaint ramp, of the requisite width, also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder for Plaintiff to traverse the property/route.

**VIOLATION of 1991 ADAS § 4.8.2; 2010 CBC § 1133B.5.3.** (Least possible slope of ramp.)  There is no compliant ramp, with the least possible slope, leading into the business.  The curb ramp exceeds the maximum running slope allowable.  Plaintiff has difficulty traveling on slopes that are not compliant ramps.

22.    Plaintiff personally encountered the foregoing barriers on (and the foregoing barriers existed during) each and every one of her three (3) visits, on July 2021 and August 2021.

23.    These inaccessible conditions denied Plaintiff full and equal access, and caused her difficulty, humiliation, and/or frustration.

24.     Defendants had actual knowledge that the foregoing architectural barriers prevented access.  Their noncompliance with the ADA Standards, ADA Accessibility Guidelines, and/or the California Building Code was intentional.

25.     Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

26.     Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

27.     Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their Property more accessible to their mobility impaired customers.  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

28.     On information and belief, Plaintiff alleges that Defendants refuse to remove these barriers.

29.     On information and belief, Plaintiff alleges that Defendants' failure to remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions; thus, the failure to provide accessible facilities was not a mishap, but rather an intentional act.

19
VERIFIED COMPLAINT

30.     These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's experts and/or access agents.  *See Doran v. 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them); *Thurston v. Midvale Corp.*, 39 Cal. App. 5th 634 (2019).

## IV. FIRST CAUSE OF ACTION:  VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT OF 1990

## (42 U.S.C. § 12101, *et seq.*)

(Against All Defendants)

31.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

32.     Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.  42 U.S.C. § 12182(a).

33.     Defendants discriminated against Plaintiff by denying her "full and equal enjoyment" and use of the goods, services, facilities, privileges, and/or accommodations they offered during each visit, and each incident of a deterred

VERIFIED COMPLAINT

1    visit.

2        34.    The acts and omissions of Defendants herein were/are in violation of

3
     Plaintiff's rights under the ADA and the regulations codified at 28 C.F.R. Part 36,
4

5    *et seq.*

6
         35.    Pursuant to the ADA, discrimination is a "failure to make reasonable
7

8    modifications in policies, practices or procedures, when such modifications are

9    necessary to afford goods, services, facilities, privileges, advantages or

10
     accommodations to individuals with disabilities, unless the entity can demonstrate
11

12   that making such modifications would fundamentally alter the nature of such goods,

13   services, facilities, privileges, advantages or accommodations." 42 U.S.C. §

14
     12182(b)(2)(A)(ii).
15

16       36.    The ADA requires removal of architectural barriers in existing

17   facilities where such removal is readily achievable.  42 U.S.C. § 12182(b)(2)(A)(iv)

18
     ("discrimination includes … a failure to remove architectural barriers, and
19

20   communication barriers that are structural in nature, in existing facilities, … where

21   such removal is readily achievable").  The term "readily achievable" is defined as

22
     "easily accomplishable and able to be carried out without much difficulty or
23

24   expense." 42 U.S.C. § 12181(9).  Barriers are defined by reference to the ADA

25   Standards for Accessible Design (ADAS), found at 28 C.F.R. Part 36, including the

26
     ADA Accessibility Guidelines for Buildings and Facilities (ADAAG), at Part 36,
27

28   Appendix A.

37.   If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable.  42 U.S.C. § 12182(b)(2)(A)(v).

38.   Defendants can remove the architectural barriers at their facility without much difficulty or expense.  Defendants violated the ADA by failing to remove the barriers because removal was readily achievable.  For instance, there are companies which can repaint parking areas for as little as $350.  Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

39.   Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make their services available through alternative methods which are readily achievable.

40.   On information and belief, Plaintiff alleges that the facility was altered after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

41.   The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).

42.   Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to

1   physically disabled persons to the maximum extent feasible.

2        43.    The ADA also requires reasonable modifications in policies, practices,
3
4   or procedures, when such modifications are necessary to afford goods, services,
5   facilities, privileges, advantages, or accommodations to individuals with
6
7   disabilities, unless the entity can demonstrate that making such modifications
8   would fundamentally alter the nature of such goods, services, facilities, privileges,
9   advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).
10
11       44.    Defendants violated the ADA by failing to make reasonable
12  modifications in policies, practices, or procedures at the Property when these
13  modifications were necessary to afford (and would not fundamentally alter the
14
15  nature of) the goods, services, facilities, privileges, advantages, or accommodations.
16       45.    Plaintiff seeks a finding from this Court that Defendants violated the
17  ADA, so that she may pursue damages under California's Unruh Civil Rights Act.
18
19       46.    Here Defendants' failure to make sure that accessible facilities were
20  available to, and ready to be used by, Plaintiff was/is a violation of law.
21       47.    Plaintiff would like to continue to frequent the Property, which is close
22
23  to her home.  However, she is deterred from doing so because she has been
24  discriminated against and is aware of accessibility barriers at the Property.
25       48.    Among the remedies sought, Plaintiff seeks an injunction order
26
27  requiring compliance with federal and state disability access laws, and remediation
28  of the existing access violations (i.e., removal of the existing barriers) at the

23
VERIFIED COMPLAINT

Property.

## V. SECOND CAUSE OF ACTION: VIOLATION OF THE

## UNRUH CIVIL RIGHTS ACT

### (Cal. Civ. Code §§ 51-53)

(Against All Defendants)

49. Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

50. California Civil Code § 51 states, in part: "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

51. California Civil Code § 51 also states, in part: "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

52. California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act (UCRA).

53. The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA. Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

54. Defendants' above-mentioned acts and omissions have violated the

24

UCRA by denying Plaintiff her rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

55.     Defendants' above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff her rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages.  *See* Cal. Civ. Code § 51(f), 52(a).

56.     Because Defendants' violation of the UCRA resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages.  *See* Cal. Civ. Code § 55.56(a), (c).

//

//

//

//

//

//

//

//

//

//

//

//

25
VERIFIED COMPLAINT

57.     Plaintiff was (actually) damaged by Defendants' wrongful conduct. She seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense (i.e., for each occasion that Plaintiff was denied full and equal access).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. For injunctive relief compelling Defendants to comply with the Unruh Civil Rights Act.  Note:  Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense.

3. Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to Cal. Civ. Code § 52.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  August 31, 2021            THE LAW OFFICE OF HAKIMI & SHAHRIARI

By: _____
        Peter Shahriari, ESQ.
        Attorney for Plaintiff Teresa Hicks

VERIFIED COMPLAINT

1
2
3

### VERIFICATION

4    I, Teresa Hicks am the plaintiff in the above-entitled action.  I have read the

5    foregoing complaint and know the contents thereof.  The same is true of my own

6
7    knowledge, except as to those matters which are therein alleged on information and

8    belief, and as to those matters, I believe it to be true.

9    I declare under penalty of perjury under the laws of the State of California

10
11   that the foregoing is true and correct.

12   Dated:  August 31, 2021

13

DocuSigned by:

14   ──1C01430994E94EC...

15   TERESA HICKS

16
17
18
19
20
21
22
23
24
25
26
27
28

VERIFIED COMPLAINT